# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION



Wilbert and Esther McCoy, on behalf of
themselves and all of those similarly
situated

             **Plaintiffs,**

             v.

Wells Fargo, N.A. d/b/a Wells Fargo
Financial National Bank; and The
Window Source, LLC

             **Defendants.**

Civil Action No. 3:17-cv-360 HSO-JCG

## COMPLAINT

THE PLAINTIFFS, and prospective Class Representatives under Federal Rule of
Civil Procedure 23, Wilbert and Esther McCoy, on behalf of themselves, and all of those
similarly situated, file suit against the above-named Defendants, and plead as follows:

*JURY TRIAL DEMANDED*

### PARTIES

1.    The Plaintiffs, Wilbert and Esther McCoy ("the McCoys" or "the Plaintiffs"),
are adult citizens of Hinds County, Mississippi, who are husband and wife. The McCoys
reside at: 562 Woodson Court, Jackson, Mississippi 39206.

2.    The first-named Defendant, Wells Fargo, N.A. d/b/a Wells Fargo Financial
National Bank ("Wells Fargo"), is a national banking corporation with its principal office
address located in Sioux Falls, South Dakota. Wells Fargo may be served with process

through its registered agent with the Mississippi Secretary of State's Office: Corporation

Service Company, 5760 I-55 North, Suite 150, Jackson, Mississippi 39211.

3.      The second-named Defendant, The Window Source, LLC ("The Window

Source"), is a Pennsylvania limited liability company that is **not** registered to conduct

business in either Mississippi or Arkansas. The Window Source may be served via any

officer or agent authorized to accept service of process (the Pennsylvania Secretary of State's

information on this entity does **not** list a registered agent for this limited liability company) at

its corporate headquarters, located at: 345 Hospital Road, Gettysburg, Pennsylvania 17325.

### JURISDICTION AND VENUE

4.      This Court possesses subject matter jurisdiction over the claims made in this

Complaint based upon federal question jurisdiction under The Truth in Lending Act

("TILA"), 15 U.S.C. § 1601, *et. seq.*, as amended. Further, federal diversity jurisdiction exists

in this matter, as the Plaintiffs are both citizens of the state of Mississippi, and the

Defendants are citizens of the states of South Dakota and Pennsylvania, respectively.

Complete diversity exists between the parties of this action, and the claims of the Plaintiffs,

not counting the potential claims of the proposed Rule 23 Class, exceed $75,000.00.

5.      This Court possesses personal jurisdiction over each of the Defendants in this

action based upon their substantial and purposeful contacts with Mississippi, the forum

state.

6.      Venue for this dispute properly lies with this Court, as this litigation involves

substantial alleged acts or omissions which occurred in Jackson, Hinds County, Mississippi,

located within judicial district of the United States District Court for the Southern District of Mississippi.

## REQUEST FOR CLASS CERTIFICATION UNDER FEDFERAL RULE OF CIVIL PROCEDURE 23

7. The McCoys, on behalf of those similarly-situated, seek certification as the class representative for a class action lawsuit, under Rule 23 of the Federal Rules of Civil Procedure.

8. The class sought to be certified under Rule 23 of the Federal Rules of Civil Procedure, with the McCoys as the class representatives, is all of those who have been victimized by the deceptive, fraudulent, unconscionable, high-pressure, in-home sales, advertising, financing, and business practices of the Defendants, as it relates to operation of the business marketed as The Window Source (and for which Wells Fargo provides exclusive, and deceptive, financing). Presumably, any individual who has bought from, or otherwise has been financially-injured by, the business practices described in this Complaint is a potential member of the Rule 23 class sought to be certified in this civil action.

9. The McCoys, as victims of the deceptive, fraudulent, unconscionable, high-pressure, in-home sales, advertising, financing, and business practices of the Defendants, as it relates to operation of the business marketed as The Window Source (and for which Wells Fargo provides exclusive, and deceptive, financing) have been financially-injured by the business practices described in this Complaint.

10. The McCoys, as the prospective class representatives, and the prospective members of this class, under Federal Rule of Civil Procedure 23, have shared similar injuries, and have suffered from similar forms of financial injury as a sole and proximate result of the

deceptive, fraudulent, unconscionable, high-pressure, in-home sales, advertising, financing, and business practices of the Defendants, as it relates to operation of the business marketed as The Window Source (and for which Wells Fargo provides exclusive, and deceptive, financing).

11.     Specifically, as relates to the appropriated of this proposed class certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure, the Defendants have acted and/or refused to act on grounds generally applicable to the class, making appropriate declaratory and injunctive relief with respect to the McCoys, and the class as a whole. The proposed class members are entitled to injunctive relief to end the Defendants' common, uniform, and deceptive trade, sales, advertising, and financing practices.

12.     Further, the proposed class is so numerous that joinder would be impracticable. Although the precise number of members of the proposed class is currently unknown, this number is far greater than can be feasibly addressed through joinder.

13.     The class members of the proposed class also share common questions of fact and law. Among these common questions of fact are law are: (1) whether the Defendants' policies or practices, as relate to the operation of The Window Source (and Wells Fargo, as to the financing) are deceptive, unlawful, unconscionable, and fraudulent; (2) whether the Defendants' policies and practices violate the TILA, 15 U.S.C. § 1601 *et.seq.*, as amended (and the corresponding, duly-promulgated federal regulations to enforce this statute); and (3) whether monetary damages, injunctive relief, and/or other equitable remedies for the class are warranted.

14.     The McCoys, the proposed class representatives, have suffered injuries, and have claims, that are typical of all customers (victims) of the deceptive trade practices of the Defendants that are described in this Complaint.

15.     The McCoys, as the proposed class representatives (the Class Plaintiffs), will fairly and adequately represent and protect the interests of the members of the class. Further, the McCoys have retained counsel who will vigorously represent the interests of the proposed Rule 23 class, as described in this Complaint.

## FACTS

16.     The Window Source's sales, advertising, and financing (via Wells Fargo) model is based upon deceptive, fraudulent, unconscionable, high-pressure, in-home sales, advertising, financing, and business practices. To put in bluntly: the products, the sales practices, the referral-program, and especially, the financing-scheme devised and perpetuated by the Defendants is a fraud and a scam.

17.     First, The Window Source knowingly, or in a (grossly) negligent manner, and as a matter of standard and customary practice, misrepresent the alleged savings that its customers will realize on their monthly utility bills. Although the in-home (and incredibly and unconscionably high-pressure) sales force of The Window Source promises its prospective customers an immediate savings of "over 50%" on their monthly home electric bills, no such savings occur.

18.     Second, The Window Source knowingly, or in a (grossly) negligent manner, and as a matter of standard and customary practice, misrepresent the alleged increase in the appraisal value of the homes of its customers that will be realized following the installation

of The Window Source's products. Although the in-home (and incredibly and unconscionably high-pressure) sales force of The Window Source promises its prospective customers an immediate increase in the appraisal value of their homes. Despite these explicit promises (warranties), reasonably relied upon by the prospective customers of The Window Source, no such fair-market-value increases, as appraised, occur.

19.     Third, the price of the products and installation, of said products, offered by the high-pressure sales force of The Window Source, is a scheme of bait-and-switch. The actual price of the products offered by The Window Source is not consistent. The sales force of The Window Source, who often refuses to leave prospective customers' homes (despite these in-home appointments regularly running past 10 P.M.) until the Defendants" sales[1] agreement is signed, plays fraudulent games regarding the prices of its products and services. The sales representatives for The Window Source regularly call their "supervisors" to obtain special, for-you-only, one-night-only, so-called "special savings." The elaborate design around this deception and fraud is consistent with the overall business practices of the Defendants, as it relates to the sales, advertising, and (deceptive, concealed) financing of The Window Source products, and even the products, themselves.

20.     The financing of The Window Source customer-purchases (derived from unlawful, deceptive, and unconscionably high-pressure sales tactics, with the sales appointments, themselves, always induced by an elaborate referral-scheme of $50/$50 cash payments) is deceptive, fraudulent, unlawful, and unconscionable. Specifically, this allegation refers to the exclusive-financing relationship that exists between The Window Source and

---

[1] It should be noted that the McCoys, at no point, signed any Wells Fargo Credit Card Agreement in connection with this transaction.

Wells Fargo, whereby customers are led to believe that they are applying for a traditional, closed-end loan only for the amount of the ever-shifting price quoted by The Window Source sales representative. In fact, the Defendants, **without any authorization or agreement from their customers**, sign their customers up for what turns out to be a Visa Home Projects credit card, issued by Wells Fargo.

21.     As a standard practice, The Window Source's sales force completes all paperwork that is executed during these late-night, in-home appointments, and then simply gets the customers to sign the paperwork that was filled out by The Window Source sales representative.

22.     In fact, the McCoys were never presented, nor did they sign, any Wells Fargo Credit Card Application. Their Wells Fargo Home Projects credit card is a completely unauthorized credit card account, fraudulently opened up by the Defendants.

23.     This practice, pleaded in the paragraph 21, above, is aimed by the Defendants at deceiving and /or concealing from the prospective customers of The Window Source/Wells Fargo: (1) the nature and quality of the actual products they are purchasing; (2) the many terms and conditions that apply to The Window Source's so-called "100% Satisfaction Guarantee" program; and (3) the financing terms – and the fact that a Visa Home Projects Program credit card is being applied for **without any authorization from the customers** – of the transaction. This practice of the Defendants, among constituting various other torts, breaches of express warranties and implied covenants, and statutory-violations, is an unlawful violation of the Truth in Lending Act.

24.     On May 22, 2015, the McCoys, induced by the unconscionable and sleazy "$50/$50" Referral Program of The Window Source, allowed a sales representative of that company to make an in-home demonstration of The Window Source's product(s).

25.     During this May 22, 2015, in-home demonstration, The Window Source/Wells Fargo sales representative: (1) promised (expressly-warranted) the McCoys that they would, without qualification, realize a savings of "at least 50%" on their monthly electric bills, from the date that The Window Source products are first installed; (2) promised (expressly-warranted) the McCoys that they would, without qualification, realize an immediate increase in the appraised fair-market-value of their home of at least the cost of the windows, from the date that The Window Source products are first installed; (3) promised the McCoys that the financing of their $5,301.85 window purchase would be via a closed-end loan, financed by The Window Source, and paid in 84 monthly payments of $106.04; and (4) promised the McCoys, without any qualification, that if they are "ever less than 100% satisfied" with The Window Source windows, then they would get a full refund.

26.     All of the above promises made to the McCoys' by their The Window Source sales representative, were not true, and were deceptive and fraudulent. These misrepresentations were material and they have caused the McCoys financial injury.

27.     The Invoice and Right to Cancel form, filled out by The Window Source sales representative, which the McCoys were deceived into signing, is attached, and incorporated into, this Complaint as Exhibit "1".

28.     The Window Source "Order and Loan Option Form" that applies to this transaction is attached, and hereby incorporated into, this Complaint as Exhibit "2". A few

points should be noted about Ex. 2 to this Complaint: (1) The Window Source is not registered to do business in the state of Arkansas, despite the representations to the contrary in Ex. 2; (2) The Window Source's own Web site does not list any locations for that company, whatsoever, within the state of Arkansas; (3) Ex. 2 states, at the bottom right corner of this document, that the contract is "Only Valid if Approved by Officer of The Window Source" – and the officer-approval-line, below, on Ex. 2 has **not** been signed by any officer of The Window Source; and (4) the "Loan Option Plan" information contained on Ex. 2 explicitly states that the McCoy's had agreed to a closed-end loan, at 7.9% APR, to be paid monthly over 84 months – and **no reference to any credit card** exists in that document.

29.     The highly fraudulent and deceptive "Loan Option Plan" terms contained in Ex. 2 makes that document the central form that The Window Source and Wells Fargo use to trick, misrepresent, and deceive their prospective customers as it related to the practices at issue in this Complaint. Ex. 2, and its "Loan Option Plan" (mis)representations, were used by the Defendants to deceive, mislead, and defraud the McCoys. The "Loan Option Plan" information contained in Ex. 2 to this Complaint did **not** disclose that a Visa Home Projects Program credit card is the actual financing-vehicle for this transaction. The "Loan Option Plan" language contained in Ex. 2 to this Complaint also fraudulently represented that is would create a credit-agreement whereby the McCoys would be approved for closed-end financing of $5,301.85 at a fixed interest rate of 7.9% APR, when it is, in fact, provided by a Visa Home Projects Program credit card that carries an interest rate of 28.24% APR.

30.     The McCoys never signed, nor were they even presented, any Wells Fargo Credit Card Application during their in-home sales presentation, made by the Defendants.

31.     A copy of a Wells Fargo Visa Home Project Credit Card Billing Statement for the unauthorized Visa/Wells Fargo credit card that ended up being issued to the McCoys, unbeknownst to them – and that shows the 28.24% APR interest rate that applies, is attached, and incorporated into, this Complaint as Exhibit "3".

32.     A collection of The Window Source marketing materials, left with the McCoys, is attached, and hereby incorporated into, this Complaint as Collective Exhibit "4". These materials illustrate the high-pressure, unconscionable, deceptive, and just plain sleazy nature of the sales practices of The Window Source/Wells Fargo, at issue in this lawsuit.

33.     The McCoys are not 100% satisfied with the quality, or installation, of their The Window Source products. For instance, the McCoys refused to sign The Window Source "Satisfactory Completion and Installation Certificate" that was presented to them by The Window Source. This unsigned "Satisfactory Completion and Installation Certificate" is attached, and incorporated into, this Complaint as Exhibit "5".

34.     The McCoys have not realized any noticeable savings on their monthly electric bills, as promised by The Window Source.

35.     The McCoys have not realized any increase in the fair-market-value of their home as a result of the installation of The Window Source windows, as promised by The Window Source sales representative, David Bradshaw.

36.     The McCoys have been deceived, tricked, and defrauded into being signed up, **without their authorization**, for a Visa Home Projects Program credit card, as a result of

the wrongful and deceptive acts of the Defendants. To repeat: the McCoys never signed any Wells Fargo/Visa Credit Card Application or Agreement. They do not know how they got enrolled into a Wells Fargo Visa Home Projects Credit Card.

37.     The Window Source misrepresents and deceives its prospective customers regarding the so-called state-of-the art, high-tech nature of its windows, which, in reality, are nothing more than over-priced double-pane windows. This deception occurs for the purpose of a wrongful pecuniary gain by the Defendants.

38.     The McCoys have suffered severe financial damages, including damages stemming from damage to their credit history, as a result of the wrongful and deceptive acts committed by the Defendants, as pleaded in this Complaint.


(THIS SPACE INTENTIONALLY LEFT BLANK)

## COUNT ONE – VIOLATIONS OF TRUTH IN LENDING ACT, AS AMENDED, 15 U.S.C. § 1601 *ET. SEQ.*

39.     The McCoys incorporate by reference all allegations of all previous paragraphs and further alleges as follows:

40.     The Defendants have committed systemic, continual, repeated, knowing, intentional, and malicious violations of the Truth in Lending Act, as amended, 15 U.S.C. § 1601, *et. seq.* In particular, the Defendants have engaged in a pattern of deceptive, fraudulent, unconscionable, high-pressure, in-home sales, advertising, financing, and business practices, as it relates to operation of the business marketed as The Window Source (and for which Wells Fargo provides exclusive, unauthorized, and deceptive, financing).

41.     The above intentional and wrongful acts have solely and proximately caused the McCoys severe financial damages.

42.     BASED UPON THE ABOVE-PLEADED ALLEGATIONS, the McCoys, on behalf of themselves and all of those similarly situated, demand that they, as the Class Representatives, be awarded damages in an amount that shall be proved to finder-of-fact at trial. However, these pleaded-damages include, but are not limited to: actual damages, statutory damages, compensatory damages, punitive damages (in an amount **not less than $5,000,000.00**), all attorneys' fees, all costs of litigation, expenses, all legal pre and post-judgment interest, and all other relief that is appropriate under the Truth in Lending Act, or that the Court finds to be just and equitable under the facts to be proven at trial.

## COUNT TWO – FRAUD

43.     The McCoys incorporate by reference all allegations of all previous paragraphs and further alleges as follows:

44.     The Defendants have committed systemic, continual, repeated, knowing, intentional, and malicious misrepresentations of materials facts for the purpose of financial gain. In particular, the Defendants have engaged in a pattern of deceptive, fraudulent, unconscionable, high-pressure, in-home sales, advertising, financing, and business practices, as it relates to operation of the business marketed as The Window Source (and for which Wells Fargo provides exclusive, and deceptive, financing).

45.     The above wrongful acts have solely and proximately caused the McCoys severe financial damages.

46.     BASED UPON THE ABOVE-PLEADED ALLEGATIONS, the McCoys, on behalf of themselves and all of those similarly situated, demand that they, as the Class Representatives, be awarded damages in an amount that shall be proved to finder-of-fact at trial. However, these pleaded-damages include, but are not limited to: actual damages, compensatory damages, punitive damages (in an amount **not less than $5,000,000.00**), all attorneys' fees, all costs of litigation, expenses, all legal pre and post-judgment interest, and all other relief that the Court finds to be just and equitable under the facts to be proven at trial.

## COUNT THREE – BREACHES OF CONTRACT (EXPRESS WARRANTIES)

47.     The McCoys incorporate by reference all allegations of all previous paragraphs and further alleges as follows:

48.     The Defendants have violated the terms of the express promises made to the McCoys, and upon which the McCoys reasonably relied, regarding the following: (1) the quality and performance of The Window Source products; (2) the financing terms and

structure of the transaction at issue in this Complaint; (3) the increase in the fair-market-value of the McCoys' home, which never occurred; (4) the immediate "over 50%" savings that the McCoys would enjoy on their monthly electric bills, but which never occurred; and (5) the no-strings-attached, 100% satisfaction guarantee of The Window Source, which is a sham.

49.     The above violations of express contractual terms have solely and proximately caused the McCoys severe financial damages.

50.     BASED UPON THE ABOVE-PLEADED ALLEGATIONS, the McCoys, on behalf of themselves and all of those similarly situated, demand that they, as the Class Representatives, be awarded damages in an amount that shall be proved to finder-of-fact at trial. However, these pleaded-damages include, but are not limited to: actual damages, compensatory damages, punitive damages (in an amount **not less than $5,000,000.00**), all attorneys' fees, all costs of litigation, expenses, all legal pre and post-judgment interest, and all other relief that the Court finds to be just and equitable under the facts to be proven at trial.

## COUNT FOUR – BREACHES OF IMPLIED WARRANTIES AND COVENANTS

51.     The McCoys incorporate by reference all allegations of all previous paragraphs and further alleges as follows:

52.     The Defendants have violated the terms of many implied warranties and covenants, especially, but not limited to, the implied covenants of good faith and fair dealing, that they owed to the McCoys, and upon which the McCoys reasonably relied, regarding the following: (1) the quality and performance of The Window Source products; (2) the

financing terms and structure of the transaction at issue in this Complaint; (3) the increase in the fair-market-value of the McCoys' home, which never occurred; (4) the immediate "over 50%" savings that the McCoys would enjoy on their monthly electric bills, but which never occurred; and (5) the no-strings-attached, 100% satisfaction guarantee of The Window Source, which is a sham.

53.     The above violations of the implied covenants of good faith and fair dealing have solely and proximately caused the McCoys severe financial damages.

54.     BASED UPON THE ABOVE-PLEADED ALLEGATIONS, the McCoys, on behalf of themselves and all of those similarly situated, demand that they, as the Class Representatives, be awarded damages in an amount that shall be proved to finder-of-fact at trial. However, these pleaded-damages include, but are not limited to: actual damages, compensatory damages, punitive damages (in an amount **not less than $5,000,000.00**), all attorneys' fees, all costs of litigation, expenses, all legal pre and post-judgment interest, and all other relief that the Court finds to be just and equitable under the facts to be proven at trial.

### COUNT FIVE – (GROSS) NEGLIGENCE

55.     The McCoys incorporate by reference all allegations of all previous paragraphs and further alleges as follows:

56.     The Defendants have, in a gross, wanton, reckless, and unconscionable manner, violated the standard of care that they owed to the McCoys, and upon which the McCoys reasonably relied, regarding the honest and truthful disclosures related to the following: (1) the quality and performance of The Window Source products; (2) the

financing terms and structure of the transaction at issue in this Complaint; (3) the increase in the fair-market-value of the McCoys' home, which never occurred; (4) the immediate "over 50%" savings that the McCoys would enjoy on their monthly electric bills, but which never occurred; and (5) the no-strings-attached, 100% satisfaction guarantee of The Window Source, which is a sham.

57.     The above (gross and wanton) violations of the standard of care owed by the Defendants to the McCoys, and the class(es) they seek to represent under F.R.C.P. 23, have solely and proximately caused the McCoys severe financial damages.

58.     BASED UPON THE ABOVE-PLEADED ALLEGATIONS, the McCoys, on behalf of themselves and all of those similarly situated, demand that they, as the Class Representatives, be awarded damages in an amount that shall be proved to finder-of-fact at trial. However, these pleaded-damages include, but are not limited to: actual damages, compensatory damages, punitive damages (in an amount **not less than $5,000,000.00**), all attorneys' fees, all costs of litigation, expenses, all legal pre and post-judgment interest, and all other relief that the Court finds to be just and equitable under the facts to be proven at trial.

## COUNT SIX – VIOLATIONS OF THE MISSISSIPPI CONSUMER PROTECTION ACT, MISS. CODE § 75-24-1 *ET. SEQ.*

59.     The McCoys incorporate by reference all allegations of all previous paragraphs and further alleges as follows:

60.     The Defendants have committed systemic, continual, repeated, knowing, intentional, and malicious misrepresentations of materials facts for the purpose of financial gain. In particular, the Defendants have engaged in a pattern of deceptive, fraudulent,

unconscionable, high-pressure, in-home sales, advertising, financing, and business practices, as it relates to operation of the business marketed as The Window Source (and for which Wells Fargo provides exclusive, and deceptive, financing).

61.     The above wrongful acts have solely and proximately caused the McCoys severe financial damages. These wrongful acts also constitute violations of the Mississippi Consumer Protection Act, Miss. Code 75-24-1 *et seq.*

62.     BASED UPON THE ABOVE-PLEADED FACTS, the McCoys demand that they be awarded damages in an amount that shall be proved to finder-of-fact at trial. However, these pleaded-damages include, but are not limited to: actual damages, compensatory damages, statutory damages, punitive damages, all attorneys' fees, all costs of litigation, expenses, all legal pre-and-post-judgment interest, and all other relief that the Court finds to be just and equitable under the facts to be proven at trial.

THIS, the 12th day of May, 2017.

> WILBERT and ESTHER
> McCOY, on behalf of themselves
> and all of those similarly situated
>
> By: *Macy Hanson*
> Macy D. Hanson
> Attorney for the Plaintiffs

MACY D. HANSON – MS BAR # 104197
macy@macyhanson.com
THE LAW OFFICE OF MACY D. HANSON, PLLC
THE ECHELON CENTER
102 FIRST CHOICE DRIVE
MADISON, MISSISSIPPI 39110
TELEPHONE: (601) 853-9521
FACSIMILE: (601) 853-9327